# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IAN BRADLEY CORBIN, | : | |
|    Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-CV-877 |
| | : | |
| MARIA DANTOS, *et al.*, | : | |
|    Defendants. | : | |

## MEMORANDUM

**JOYNER, J.**                                                                                       **JULY 1, 2020**

      Plaintiff Ian Bradley Corbin, a pretrial detainee currently incarcerated at Lehigh County Jail, has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, naming as Defendants Judge Maria Dantos, public defender Mike Vedomsky, appointed defense counsel Carol Marciano and Sean Poll, Warden of Lehigh County Jail Kyle Russel, Assistant District Attorney Jared Hanna, and District Attorney Joseph Stauffer. (ECF No. 3.) Corbin has also filed a Motion for Leave to Proceed *in Forma Pauperis* together with an inmate account statement (ECF Nos. 1 and 2.) For the following reasons, Corbin will be granted leave to proceed *in forma pauperis,* and the Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.     FACTUAL ALLEGATIONS[1]

     The gravamen of Corbin's Complaint is that he has been denied bail and has remained incarcerated while waiting for trial on two sets of drug charges. His continued incarceration has allegedly violated his civil rights.

      According to the Complaint, on August 1, 2019, following a search, Corbin was arrested and charged with two counts of possession with intent to distribute, two counts of possession,

---

[1] The allegations set forth in this Memorandum are taken from Corbin's Complaint.

and one count of possession of drug paraphernalia.  The charges are alleged to have been approved by District Attorney Jared Hanna.  (ECF No. 3 at 5.)[2]  Bail was set at $50,000, and Corbin was committed to Lehigh County Jail when he was unable to post bail.  On August 8, 2019, at a preliminary hearing, Corbin waived his right to a hearing despite his belief that there were defects in the warrant and supporting documents.  Corbin's request for a reduction in bail was denied, but he was, nevertheless, able to post bail.  (*Id.* at 5.)

On October 8, 2019, Corbin was arrested on new charges, allegedly the result of an illegal search and seizure.  He was charged with possession with intent to distribute, possession, and terroristic threats.  Bail was initially set at $25,000, but was revoked at a subsequent bail hearing.  (*Id.* at 6.)  Corbin's preliminary hearing was continued and he remined in jail.  His counsel, Defendant Marciano, allegedly refused to request discovery or a modification of the revocation of bail, and advised Corbin to waive his preliminary hearing – a recommendation he rejected.  (*Id.*)

Following his November 2019 preliminary hearing, charges against Corbin were bound over for trial, and Defendant Marciano recommended that Corbin accept a plea bargain. Corbin refused, believing that there were constitutional deficiencies in his arrest and incarceration, and objecting to a plea as a cover up.  (*Id.* at 9.)  In this regard, Corbin alleges that there were no drugs present at his August 1 arrest, belying the charges against him, and that the criminal proceedings against him were the result of collusion between the District Attorney and his appointed defense counsel.  (*Id.* at 10-11.)

Defendant Marciano continued to recommend a plea bargain and Corbin continued to resist.  (*Id.* at 11.)  At a December 2019 status conference, Defendant Dantos granted Defendant

---

[2] The Court adopts the pagination assigned to the Complaint by the EC/ECF docketing system.

Marciano's motion to withdraw as counsel; Corbin was not permitted to testify at the hearing about the corruption, collusion and ineffectiveness of his counsel. (*Id.* at 12.) Defendant Poll was appointed as defense counsel, a bail hearing was conducted, and Corbin's request for bail was denied. (*Id.*) Corbin characterizes this as further evidence of the lack of fairness and impartiality in the process, and as violative of his $4^{th,}$ 5th, 6th, 8th, 13th and 14th Amendment rights.

Following the December 2019 hearing, Defendant Poll encouraged Corbin to enter into a plea bargain. Corbin refused, and proceeded to file petitions for writ of habeas corpus, petitions for modification of bail, and petitions for withdrawal of counsel in both of his pending criminal cases. (*Id.* at 13.)

In January 2020, Corbin received a misconduct from Warden Russell for allegedly using another inmate's PIN number to contact his, Corbin's, family. (*Id.* at 14.) Corbin alleges that the misconduct was issued to intimidate him and to retaliate against him. (*Id.*) Also in January 2020, Corbin's further request for bail was denied. (*Id.* at 16.)

Based on the foregoing, Corbin asserts claims against the named Defendants and requests relief as follows: dismissal of charges against him, nominal bail if charges are reinstated, hearings on writs previously filed, discharge from custody, compensatory damages to permit Corbin to secure housing, suppression of evidence or release of evidence to Corbin for destruction, criminal process instituted against all of the named Defendants, disqualification of Defendant Dantos from Corbin's case, $250,000 in compensatory damages and $1 million in punitive damages. (*Id.* at 27-28.)

Review of the public docket in *Commonwealth v. Corbin*, No. CP-39-CR-3456-2019, Lehigh County Court of Common Pleas, reveals that Corbin continues to seek release on bail. His most recent request was denied on April 14, 2020.

**II.     STANDARD OF REVIEW**

Because Corbin appears to be unable to pay the filing fee in this matter, the Court will grant him leave to proceed *in forma pauperis*.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) apply, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice.  *Id.*  As Corbin is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[4]  *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.   Claims for Injunctive Relief

---

[3] Because Corbin is a prisoner, under the provisions of the Prison Litigation Reform Act, he must still pay the filing fee in full in installments.

[4] Corbin cites other statutes in his Complaint, including 42 U.S.C § 1981, which prohibits racial discrimination in contracts, and § 1985, which prohibits race-based conspiracies.  None of those statutes has an apparent relevance here, so the Court will focus on Corbin's § 1983 claims.

In his request for relief, Corbin includes requests for injunctive relief, including dismissal of charges against him, discharge from custody,[5] and suppression of evidence or release to Corbin of relevant evidence for destruction by him.  However, favorable rulings on these requests would impermissibly interfere with the underlying state court criminal proceedings, and are therefore improper under § 1983.  *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (federal courts may not interfere with state criminal proceedings); *Duran v. Weeks*, 399 F. App'x 756, 758-59 (3d Cir. 2010) (per curiam) ("Since Duran's section 1983 action seeking to enjoin his criminal proceedings presents the classic case for Younger abstention, the District Court's dismissal of Duran's complaint on that basis was clearly appropriate.")  Corbin's requests for injunctive relief will, accordingly, be dismissed with prejudice.

**B.      Claims for Damages**

   **a.      Claims Against Judge Dantos**

Corbin purports to state claims against Judge Dantos based on her conduct during court proceedings.  (ECF No. 3 at 17-19.)  These claims against Judge Dantos are dismissed with prejudice.  Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction.  *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (per curiam); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam).  An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).  Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is

---

[5] Of note, claims challenging the fact or duration of physical imprisonment and seeking release from confinement must be raised in a petition for a writ of habeas corpus.  *See generally Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

Corbin's Complaint clearly asserts that the claims against Judge Dantos arise from the hearings over which she presided and her consistent refusal to grant Corbin's requests for bail. There is no suggestion that Judge Dantos was acting in the complete absence of all jurisdiction. Because presiding over hearings and entertaining and resolving motions for bail are functions normally performed by a judge, Corbin's claims based on this conduct must be dismissed with prejudice under § 1915 because Judge Dantos is absolutely immune from suit.

### b. Claims Against Attorneys Vedomsky, Marciano and Poll

Corbin's claims against Defendants Vedomsky[6], Marciano and Poll are based upon their alleged role as a public defender (Vedomsky) and as Corbin's appointed defense counsel (Marciano and Poll) in the state criminal proceedings. (ECF No. 3 at 19-21.) Because criminal defense attorneys are not "state actors" under § 1983, the constitutional claims against Vendomsky, Marciano and Poll must be dismissed with prejudice.[7] *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when

---

[6] Defendant Vedomsky is not referred to in Corbin's recitation of the facts, but is included in his description of the claims against each Defendant. Vedomsky is alleged to have failed to correct errors in various documents in his capacity as a public defender. (ECF No. 3 at 19.)

[7] There is also no basis for concluding that these attorneys could be considered state actors based on any alleged conspiracy with Judge Dantos or prosecutors. "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox, Rothschild, LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "'A conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions.'" *Capograsso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (per curiam) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990)). Corbin's bare allegations of conspiracy do not render his attorneys state actors for purposes of § 1983.

performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.") (footnote omitted); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court.").

### c.  Claims Against District Attorney Stauffer and Assistant District Attorney Hanna

Corbin asserts that Defendant Hanna, in his capacity as Assistant District Attorney, instituted and continued criminal proceedings against Corbin and conspired with others to do so; he asserts that Defendant Stauffer, in his capacity as District Attorney, engaged in efforts to obtain an illegal plea deal, conspired to deprive Corbin of his rights and privileges, and to expose him to excessive pretrial incarceration.  (ECF No. 3 at 22.)  Prosecutors, however, are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case."  *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976).  Moreover, District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth.  *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009).  Because all of the conduct alleged to have been engaged in by these Defendants occurred in the course of Corbin's criminal proceedings, they are entitled to absolute immunity and the claims against them must be dismissed with prejudice.

### d.  Claims against Warden Russell

In his recitation of facts, Corbin alleges that Russell issued him a misconduct to intimidate and retaliate against him.  (ECF No. 3 at 14.)  The Court understands Corbin to be attempting to assert a due process claim based on this conduct, and, further, reads Corbin's allegations as suggesting that the misconduct was issued falsely.  Even if this is the case, "the

filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (per curiam), as "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports.'" *Thomas v. McCoy*, 467 F.3d 94, 97 (3d Cir. 20120 (per curiam), *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."). Corbin does not allege anything further with respect to the issuance of the misconduct – including any basis for his claim that its issuance was retaliatory. In these circumstances, the claim must be dismissed. Corbin, however, will be granted leave to amend this claim.

Corbin asserts a further claim against Defendant Russell – that he conspired with jail staff to put Corbin in a disciplinary segregation unit in retaliation for Corbin pursuing a civil action. (ECF No. 3 at 21.) Corbin offers no other facts to substantiate this claim.

Corbin's claim based on his placement in disciplinary segregation is best construed as an additional due process claim. "[D]etention officials' restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) "there is a showing of express intent to punish on the part of [those] [ ] officials"; (2) "the restriction or condition is not rationally related to a legitimate non-punitive government purpose," i.e., "if it is arbitrary or purposeless"; or (3) "the restriction is excessive in light of that purpose." *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (quoting *Stevenson*, 495 F.3d at 67-68) (alterations in original). "[M]aintaining internal security and order in jails and prisons are 'legitimate governmental objectives'" that may justify placement of a detainee in administrative segregation, and "courts must give prison officials considerable discretion to manage internal security in their institutions." *Id.* In other words, if officials can articulate a legitimate managerial concern for

8

placement of the detainee in restricted housing, a substantive due process claim is foreclosed. *Stevenson*, 495 F.3d at 69 ("Although the substantive and procedural due process evaluations are distinct, a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry").

From a procedural standpoint, "[t]he degree of process required varies depending on the reason for the transfer, with greater process accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons." *Id.* at 70. "[T]he procedures required by *Wolff v. McDonnell,* 418 U.S. 539 (1974), apply if the restraint on liberty is imposed for disciplinary reasons; if the restraint is for 'administrative' purposes, the minimal procedures outlined in *Hewitt v. Helms,* 459 U.S. 460 (1983) are all that is required." *Lewis v. Williams*, Civ. A. No. 05-013, 2011 WL 2441377, at *17 (D. Del. June 13, 2011) (citing *Stevenson*, 495 F.3d at 70). The procedures set forth in *Wolff* "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018); *see also Quiero v. Ott*, 799 F. App'x 144 at n.6 (3d Cir. 2020) (per curiam). *Hewitt* requires that, within a reasonable time, a detainee be given an explanation of the reason for the administrative transfer as well as an opportunity to respond. *Steele*, 855 F.3d at 507; *Stevenson,* 495 F.3d at 70 (citations omitted).

Here, Corbin simply does not include enough facts to permit the Court to evaluate his claim. He does not describe the events leading up to his transfer to disciplinary segregation and does not state how long he remained there. Absent these facts, the claim is not plausible. Corbin will be granted leave to amend this claim.

## IV. CONCLUSION

For the reasons stated, Corbin's application for leave to proceed *in forma pauperis* will be granted and his claims against Defendants Dantos, Vedomsky, Marciano, Poll, Hanna, and Stauffer will be dismissed with prejudice pursuant to § 1915(e)(2)(B). The claims will be dismissed with no leave granted to amend because amendment would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002). Corbin's claims against Defendant Russell will be dismissed without prejudice, and Corbin will be granted leave to amend those claims. An appropriate Order follows.

                                            **BY THE COURT:**

                                            s/ J. Curtis Joyner
                                            _____
                                            **J. CURTIS JOYNER, J.**